UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
ANETHA BARFIELD,                      :
                                      :
                Plaintiff,            :    05 Civ. 6319 (JSR)
                                      :
         -v-                          :    OPINION AND ORDER
                                      :
NEW YORK CITY HEALTH AND HOSPITALS    :
CORPORATION and BELLEVUE HOSPITAL     :
CENTER,                               :
                                      :
                Defendants.           :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-2-06

    Plaintiff Anetha Barfield, a nurse who was paid by nursing referral agencies for work she performed for and at Bellevue Hospital ("Bellevue"), alleges that Bellevue and its principal, the New York City Health and Hospitals Corporation, violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1). By Memorandum Order dated November 17, 2005, the Court denied plaintiff's motion to certify a collective action under the FLSA, following which the case proceeded to the completion of discovery. Presently pending before the Court are the parties' respective motions for summary judgment.

    The basic facts are undisputed. From about August 2002 to May 2005, plaintiff worked at Bellevue through three different referral agencies. Plaintiff's Statement of Material Undisputed Facts ("Pl. Statement") ¶¶ 11-12; Defendants' Counterstatement of Material Facts ("Def. Counterstatement") ¶¶ 11-12. Between October 30, 2003 and January 31, 2005, there were at least 16 weeks during which plaintiff, by working through multiple agencies, worked more

than 40 hours at Bellevue in a given week. Pl. Statement ¶¶ 15-16; Def. Counterstatement ¶¶ 15-16. Plaintiff did not receive overtime pay for any of those hours worked in excess of 40 hours. Pl. Statement ¶ 18; Def. Counterstatement ¶ 18.

Under the FLSA, "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives [overtime] compensation." 29 U.S.C. § 207(a)(1). Because the plaintiff was paid, and in that sense employed, by the nursing referral agencies, the critical question is whether Bellevue was also her "employer" under the terms of the FLSA. See 29 C.F.R. § 791.2 (providing that an individual may be employed by more than one entity at the same time).

Under the FLSA, an entity employs an individual if it "suffer[s] or permit[s]" that individual to work. 29 U.S.C. § 203(g). Given this expansive definition of employment, see Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947), any entity that as a matter of economic reality functions as an individual's employer may be treated as an "employer" under the Act even if another entity also so functions at the same time. See Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). Although the Court in Zheng suggested that certain "outsourcing" arrangements fall outside the ambit of the FLSA, id. at 76, it held more generally that, in such circumstances, a court, in determining whether a particular entity has functional control over a worker, must consider the "circumstances of the whole activity viewed in light of economic reality," id. at 71 (internal quotation marks omitted). In so doing,

the court should take account of such factors as "(1) whether [defendants'] premises and equipment were used for the plaintiffs' work; (2) whether the [referral agencies] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [defendants'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendants] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendants]." Id. at 72.

The Court therefore turns to applying this test to the particular circumstances that plaintiff's individual case presents:

As to the first factor, i.e., "whether [defendants'] premises and equipment were used for plaintiff's work," it is undisputed that plaintiff performed her work on Bellevue's premises and in so doing used equipment provided by Bellevue. Pl. Statement ¶¶ 20-21; Def. Counterstatement ¶¶ 20-21.

As to the second factor, although the referral agencies contracted with numerous clients and remained free to send their employees to assignments at any of those other facilities, the referral agencies generally did not "shift as a unit from one putative joint employer to another." Zheng, 355 F.3d at 72. In particular, in plaintiff's case, during the period here in issue plaintiff was assigned only to Bellevue. Pl. Statement ¶¶ 22-23; Def. Counterstatement ¶¶ 22-23. While theoretically she could have been assigned elsewhere, the referral agencies were expected

"whenever possible, to assign the same nurses for an extended period of time to the same hospitals in order to promote more continuity of care and to increase the productivity of the nurses and the value of their services." Ex. 25 (New York City Health and Hospitals Corporation Operating Procedure No. 130-1, dated January 18, 1980), attached to Declaration of Abdool Hassad sworn to April 12, 2006.

As to the third factor, i.e., "the extent to which plaintiffs performed a discrete line-job that was integral to [defendants'] process of production," it is undisputed that plaintiff performed work that was integral to Bellevue's operation. Pl. Statement ¶ 30; Def. Counterstatement ¶ 30.[1]

As to the fourth factor, i.e., "whether responsibility under the contracts could pass from one subcontractor to another without material changes," it is undisputed that plaintiff signed up to work at Bellevue through multiple referral agencies and that her work responsibilities remained the same regardless of which agency referred her. Pl. Statement ¶ 43; Def. Counterstatement ¶ 43.

As to the fifth factor, i.e., the "degree to which the [defendants] or their agents supervised plaintiffs' work," the relevant consideration in this context is whether Bellevue "demonstrate[d] effective control of the terms and conditions of the plaintiff's employment," particularly the extent to which Bellevue set employees' schedules. See Zheng, 355 F.3d at 75. Although defendants dispute that Bellevue "schedules" the agency nurses,

---

[1] However, this factor was raised by the Zheng court in the particular context of a production line, id. at 73, and therefore may be less relevant here.

defendants acknowledge that Bellevue provides agency nurses with tentative dates and times on which they may need to work and requires them to call in to determine if they should report to work. Def. Counterstatement ¶ 49. Bellevue sends this schedule to the referral agencies so that they can pass the information on to the nurses; the nurses may also call the Bellevue staffing office directly to obtain this information. Id. Further, on several occasions, Bellevue asked plaintiff to work double-shifts and, before plaintiff worked the additional shift, it was approved by Bellevue. Pl. Statement ¶ 54; Def. Counterstatement ¶ 54.

As to the sixth factor, i.e., "whether plaintiff worked exclusively or predominantly for the defendant," the plaintiff here, as already noted, worked exclusively for Bellevue.[2]

As the above analysis demonstrates, all the Zheng factors here point, to a greater or lesser degree, toward plaintiff's being employed by Bellevue. In addition, under Zheng, the Court may "consider any other factors it deems relevant to its assessment of the economic realities." Id. at 71-72. Here, it is undisputed that Bellevue exercises at least some control over which agency nurses are permitted to work for the hospital, see Deposition of Maximina Silas dated March 8, 2006 at 76-78 (cited in Def. Counterstatement ¶ 67)), regularly evaluates the performance of agency nurses, Pl. Statement ¶

---

[2] Again, however, this factor may be of less importance here than in Zheng, because it is relevant only insofar as "the joint employer may *de facto* become responsible, among other things, for the amount workers are paid and for their schedules, which are traditional indicia of employment." Zheng, 355 F.3d at 75. As noted above, Bellevue controlled the plaintiff's schedule, but there is no evidence in the record that it controlled the amount the agency nurses were paid.

28; Def. Counterstatement ¶ 28, and could prohibit an agency nurse from continuing to work at Bellevue if it believed she had committed a major violation of some rule or if it was otherwise dissatisfied with the nurse's performance, Def. Counterstatement ¶¶ 29, 70.

From all the foregoing, it is obvious that no evidentiary dispute remains that is material to the determination here in issue but that, rather, consideration of the undisputed "circumstances of the whole activity viewed in light of economic reality" demonstrates that Bellevue exercised functional control over plaintiff and was her joint employer. Cf. Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F. Supp. 344, 349 (S.D.N.Y. 1984) (holding that, under Title VII, a temporary employee was employed by both her temp agency and the business at which she worked on a temporary basis).

Defendants' fallback arguments are that, even assuming Bellevue is plaintiff's "joint employer," plaintiff is still not entitled to recover overtime wages because (i) at least one of her referral agencies informed her it would not pay overtime and (ii) she prevented Bellevue from determining how many hours she worked by signing in through multiple referral agencies.

As to the first argument, while it is true that one of plaintiff's referral agencies told her that she should not work through it for more than 40 hours per week, see transcript, 9/28/05, at 57, Bellevue itself never told her she should not work there more than 40 hours per week; it told her only that the referral agencies bore responsibility for paying her overtime (the very legal issue here in dispute). See transcript, 9/28/05, at 38-39, 57; see also Holzapfel v. Town of Newburgh, 145 F.3d 516, 525 (2d Cir. 1998)

(holding that an employee might be entitled to overtime where he was told that he would not be paid overtime but was not told to limit his hours).

As for the second argument, "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours." Id. at 524. Here, it is undisputed that plaintiff accurately reported all of the hours she worked on the appropriate agency sign-in sheets, and that Bellevue collected these sign-in sheets and cross-referenced them on a daily basis against verification forms that supervising nurses signed after each shift. Def. Counterstatement ¶ 62. Although Bellevue did not determine the hours the agency nurses worked on a weekly basis, "[a]n employer need not have actual knowledge . . .; constructive knowledge will suffice." Id. at 524. Here, moreover, it is undisputed that Bellevue employees encouraged plaintiff to work shifts additional to those for which she had been scheduled in advance, and at least one of the Bellevue employees responsible for verifying the sign-in sheets acknowledged that, although she did not look for agency nurses who worked for more than one agency, she sometimes noticed that this occurred. Deposition of Gwendolyn Tompkins dated February 21, 2006 at 41.

Accordingly, plaintiff Barfield is entitled to summary judgment as to the liability of defendants under the FLSA. As for damages, plaintiff is entitled to the amount of her unpaid overtime compensation and further, because defendants have failed to establish that they took any affirmative action to determine if their actions were in compliance with the FLSA, see Herman v. RSR Sec. Servs., 172

F.3d 132, 142-43 (2d Cir. 1999); <u>Reich v. S. New England Telecoms. Corp.</u>, 121 F.3d 58, 71-72 (2d Cir. 1997), plaintiff is also entitled to an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). Plaintiff's counsel should therefore submit to the Court in writing, by no later than June 9, 2006, a detailed statement of the amounts of these damages, to which defendants, if they dispute the calculations, may respond in writing by no later than June 16, 2006.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       May 30, 2006